

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA             :
                                     :
                                     :
              v.                     :   Case No.
                                     :   CR-01-00248-01
TRAVIS THURSTON PARKER,              :
     Defendant                       :


TRANSCRIPT OF PROCEEDINGS
RESENTENCING


BEFORE:   HON. WILLIAM W. CALDWELL, Judge

DATE:     May 24, 2005

PLACE:    Courtroom Number Three
          Federal Building
          Harrisburg, Pennsylvania


COUNSEL PRESENT:

CHRISTY FAWCETT, Assistant United States Attorney
    For - United States of America

L. REX BICKLEY, Esquire
    For - Defendant

**FILED**
HARRISBURG, PA

MAY 2 2 2007

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

Vicki L. Fox, RMR
Court Reporter

1           THE COURT: Good morning.

2           MR. BICKLEY: Good morning, Your Honor.

3           MS. FAWCETT: Good morning, Your Honor. This is

4  number 1:CR-01-248-01, United States of America versus

5  Travis Parker. Mr. Parker was sentenced by Your Honor

6  previously. His case was remanded from the Third Circuit

7  subsequent to the decision in the Booker case for

8  resentencing. And he is here with his attorney Mr. Bickley.

9           THE COURT: Okay. Good morning, gentlemen.

10          MR. BICKLEY: Good morning, Judge.

11          THE COURT: Mr. Bickley, do you wish to speak?

12          MR. BICKLEY: Thank you, Judge. As you know, we

13 are here by virtue of Supreme Court decisions regarding the

14 Sentencing Guidelines. And frankly, I am a little in the

15 dark about how this is to occur myself.

16          I don't know if the Court is in a position to

17 make a Gestalt sort of decision about this, or it has to go

18 back to the Guidelines and make various and sundry Guideline

19 modifications to reach a conclusion to which it deems

20 appropriate.

21          I don't know the answer to that question. But

22 let me respond as follows: The Court was generous I think

23 the first time around in some of its decisions with respect

24 to role in the offense and with whom he had contact. I am

25 not going to rehash that. But I am just going to ask the

3

1   Court to follow what the Supreme Court seems to be saying.
2   That is the guidelines are advisory, and the sentence
3   ultimately has got to be reasonable.
4           This fellow was sentenced to 27 years, and I
5   don't get that to tell you the truth. He was convicted, and
6   he is not here to say he didn't do anything. He did. And
7   the man whatever happens today is going to be sentenced to a
8   long term of imprisonment. There is no doubt about it. The
9   jury so found, and that is what this Court is going to do.
10          But he started to do what he was doing at the age
11  of 15. He was arrested when he was 19. He was a very young
12  man. I don't think there were any guns involved in this
13  thing. His criminal history is -- I think there is one mark
14  there and a juvenile adjudication.
15          All I am asking the Court, whether it does it in
16  a Gestalt way or by virtue of particular findings maybe as
17  to weights and roles in the offense, that it fashion a
18  sentence that is simply not nuts, that is not stratospheric.
19          The Supreme Court decision now allows the Court
20  to say gee, that sentence was a little bit unreasonable. I
21  want to make it a little bit more reasonable under all of
22  these circumstances. And that is basically my offering
23  today, Judge, just something that comports to something that
24  is sensible under these circumstances.
25          THE COURT: Travis, you have a right to say

4

1   anything you would like to say.
2           THE DEFENDANT: Yes, sir. Thank you. Your
3   Honor, I will begin with expressing my remorse for my
4   actions. I am highly aware through my actions I have helped
5   individuals destroy themselves. Hence, I have helped
6   destroy families, and I have helped destroy my community.
7           Unfortunately, I can't go back in the past and
8   change it, but I can learn from my mistakes and help others
9   not to make these same mistakes.
10          I do not harbor disdain for any witness,
11  prosecutor, jury, Judge or any person for that matter, Your
12  Honor. Before my fall from grace --
13          THE COURT: Don't go so fast. Slow down.
14  A    I am sorry, Your Honor. I have asked for penitence.
15  I am back on that same wavelength to say the least. Being
16  incarcerated has been mind altering. I now take pride in
17  things I didn't care too much about prior to my ordeal such
18  as my appearance, who I associate myself with, and how other
19  people view me.
20          Your Honor, I have made some mistakes, but I do
21  have a good heart and conscience. I come from a decent,
22  well respected supportive family. I chose this route out of
23  stupidity.
24          I am my own man now, and I will never put myself
25  in a position where my family and freedom can be taken from

5

me. Upon my release, I plan to move to South Carolina with my father in hopes of starting a new life. I will endeavor to regain the trust of my family, friends and others.

Secondly, Your Honor, I will expand on my rehabilitation. While incarcerated, I concentrated my time to studying law. I have a considerable amount of hours in the GED program. I participated in institutional programs. I developed a laborious attitude as a result of working everyday.

I haven't missed a payment on my fine. I have strengthened my family bond. I received only one incident report. As well for exceptional behavior, I was able to be transferred to an FCI from a USP in a little over a year, a month before the prescribed BOP policy which is 18 to 21 months.

In addition, I am currently in the process of corresponding with youngsters alongside my father to admonish them of the ramifications of street life.

THE COURT: Slow down a little bit.

THE DEFENDANT: All right. I am a little nervous.

THE COURT: I know you are nervous.

THE DEFENDANT: Your Honor, in closing, I honestly had my mind fixed on doing 27 years in prison. I never thought I would be back before you with an opportunity

6

1  for relief.  I say that to say my willingness to change is
2  genuine, not to delude the Court.
3          I have honestly changed.  I assure you if you cut
4  me a break, it will not come back to haunt you in any way,
5  Your Honor.
6          I ask that you give care to what has been said.
7  In addition, I ask for mercy for my Co-Defendant for my
8  cousin Darryl.  Thank you, Your Honor.
9          If you or the Prosecutor has any questions,
10 please feel free to ask.
11         THE COURT:  How old is Darryl?
12         THE DEFENDANT:  If I am not mistaken, Darryl is
13 36.
14         THE COURT:  He is considerably older than you
15 are?
16         THE DEFENDANT:  Yes, sir.
17         THE COURT:  Is he who got you started in this
18 business?
19         THE DEFENDANT:  No, sir.
20         THE COURT:  He didn't?
21         THE DEFENDANT:  No, sir.
22         THE COURT:  How did you get started in drugs?
23         THE DEFENDANT:  Your Honor, my Mom is a crack
24 addict.  So I just -- it was like I want to say inevitable.
25 I mean when I was a baby, my Mom was doing drugs since I

7

1   have been able to remember anything.  I want to say it would
2   have been inevitable.  I couldn't think for myself.
3            THE COURT:  What kind of sentence did Darryl get?
4            MS. FAWCETT:  My recollection is his sentence was
5   24 or 27 years.  I believe Mr. Vought did that presentence.
6            THE COURT:  That is okay.  That's close enough.
7   It was less?
8            MS. FAWCETT:  It was less.
9            THE COURT:  Okay.
10           MR. BICKLEY:  Your Honor, some of his family is
11  in the courtroom to support him today.
12           THE COURT:  You are very fortunate, Travis, to
13  have a family support you and sticking with you.  A lot of
14  young men your age don't have that.  I am sure you
15  appreciate that, and I am sure you want to share what you
16  are telling me is sincere.  At least, I hope so.
17           Mrs. Fawcett?
18           MS. FAWCETT:  Your Honor, the bulk of what
19  Mr. Parker and Mr. Bickley are stating with respect to his
20  background and some of the circumstances of the offense is
21  correct.
22           He did have I believe a prior criminal history of
23  only one juvenile offense.  He was on probation or parole
24  for the juvenile offense at the time of the commission of
25  the offense, but it was only one offense.  He was extremely

8

1    young at the time the offense was committed.
2         He said just now that it was not his cousin
3    Darryl Parker who got him started in this course of conduct.
4    I would suggest to the Court that his cousin Darryl Parker
5    did have some influence on his continuing involvement.
6         His cousin was considerably older than he. His
7    cousin has been through the state system a number of times.
8    And that is not the case with Mr. Parker.
9         Under those circumstances, I would suggest that
10   the sentence that the defendant should receive is best left
11   to the discretion of the Court.
12        THE COURT: What about that charge in York
13   County? Is it still alive I guess?
14        MS. FAWCETT: I don't know the --
15        THE COURT: Mr. Vought might have.
16        MR. VOUGHT: Your Honor, I made a phone call
17   yesterday. That charge was nol-prossed in September of
18   2003.
19        THE COURT: Thank you. So he is not facing any
20   charges?
21        MR. VOUGHT: Not from what I was told yesterday.
22        THE COURT: Okay. Well, this is a very
23   unfortunate situation. I am very relieved that the Supreme
24   Court decided the Booker case and put some discretion in
25   Judge's hands. I think the sentence that I imposed in May

9

1  of 2003 was mandated by the Guidelines.  I don't think I had
2  any discretion.
3       I have reviewed again the provisions in the 18
4  U.S. Code 3553 which the Supreme Court indicated is now
5  going to direct our handling of these matters.
6       First, we are admonished by that section to
7  consider the nature and circumstances of the offense and the
8  history of the defendant.  And that history as I think we
9  know at this point is not very good.
10      I think the presentence report confirms the fact
11 that Travis was raised in a home where drugs were being
12 used, and it is easy to understand how he got started in
13 this business.
14      The second thing that this section provides for
15 is the need for the sentence imposed.  The sentence is
16 supposed to reflect the seriousness of the offense and
17 provide a just punishment.
18      Certainly, the drug dealing that Travis and his
19 cousin and others were involved in was very serious.
20 Whatever the sentence is here, I think will be a just
21 punishment.
22      I am impressed with Travis's strides that he has
23 made so far.  You have only one mark on your record in the
24 prison as I understand it.
25           THE DEFENDANT:  Yes, sir.

1     THE COURT: That had something to do with an
2  untidy cell; is that correct?
3     THE DEFENDANT: Yes, sir.
4     THE COURT: You haven't been in any confrontation
5  with guards or anything of that nature?
6     THE DEFENDANT: No, sir.
7     THE COURT: You are trying to get some education
8  I hope?
9     THE DEFENDANT: Yes, sir.
10    THE COURT: I think the sentence that I imposed
11 of 27 years in 2003 was totally unfair and unjust. And I
12 felt badly that I didn't have the power at that time to do
13 anything about it. But I do today.
14    And I think considering the sentence imposed on
15 Darryl, considering Travis's background and so forth, that
16 his sentence should be reduced to a term of 15 years.
17    I still have to recognize Travis the seriousness
18 of the offenses that you committed and the fact that I am
19 constrained to impose a just punishment. So that I think
20 180 months, which is a considerable reduction from the
21 27 years that I imposed before, is a fair resolution of this
22 situation.
23    I will enter -- I will hand down rather a written
24 order outlining some of these things in the event that there
25 are any further proceedings. I don't think there is

11

1   anything else that I need to do.
2           MS. FAWCETT: I don't believe so, Your Honor.
3           THE COURT: Mr. Vought, are you satisfied?
4           MR. VOUGHT: Your Honor, this is my first
5   resentencing so I am not sure really what needs --
6           THE COURT: I don't think there is anything else
7   for me to do.
8           MR. BICKLEY: Thank you, Your Honor.
9           THE COURT: Good luck, Travis.
10          MS. FAWCETT: Your Honor, I am sorry. Ms.
11  Michaels reminded me, you do need to advise him of his
12  appellate rights.
13          THE COURT: That's right. For ten days, Travis,
14  you have the right to appeal the decision that I have made
15  today. You are entitled to counsel. And if you can't
16  afford counsel, counsel will be appointed for you.
17          I am sure Mr. Bickley will file a notice of
18  appeal for you should you wish to pursue an appeal. I am
19  sure he would also discuss with you whether you
20  realistically have any grounds for appealing at this point.
21  I think that is adequate.
22          MS. FAWCETT: Thank you, Your Honor.
23          MR. BICKLEY: Thank you, Judge.
24          (Whereupon, the proceedings were concluded.)
25

12

1     I hereby certify that the proceedings and
2  evidence are contained fully and accurately in the notes
3  taken by me on the trial of the above cause, and that this
4  copy is a correct transcript of the same.
5
6                    *Vicki A Fox, RMR* (signature)
7                    Vicki L. Fox, RMR
8
9
10
11          The foregoing certification of this transcript
12  does not apply to any reproduction by any means unless under
13  the direct control and/or supervision of the certifying
14  reporter.